[Civ. No. 13027.   First Dist., Div. One.   June 7, 1946.]

VETERANS' WELFARE BOARD (a Public Corporation) et al., Appellants, v. CITY OF OAKLAND et al., Respondents.

Thos. J. Riordan, Warren H. Atherton and Chellis Carpenter for Appellants.

Ralph E. Hoyt, District Attorney (Alameda), J. E. Coakley, Chief Assistant District Attorney, R. Robert Hunter, Assistant District Attorney, Douglas R. Dunning, Deputy District Attorney, F. B. Fernhoff, City Attorney (Oakland), John W. Collier, Assistant City Attorney, Francis P. Healey, District Attorney (Contra Costa), John L. Garaventa, Deputy District Attorney, and Archibald B. Tinning for Respondents.

PETERS, P. J.—Plaintiffs, the Veterans' Welfare Board and Fred A. Beck, appeal from a judgment in favor of certain of the defendants entered after the sustaining of demurrers to the complaint. The complaint names the city of Oakland, the counties of Alameda and Contra Costa, Joint Highway District No. 13, The Six Companies of California and certain John Does as defendants. So far as the present record shows, only the first four defendants demurred, and the judgment appealed from is in favor of those four defendants alone. Reference to defendants, hereafter, will be to these four parties.

In their closing brief and at the oral argument plaintiffs frankly and fairly conceded that they have not stated a cause of action against the city of Oakland, and have agreed that the judgment in favor of that defendant should be affirmed.

The action grows out of the construction of a low level tunnel between Alameda and Contra Costa Counties. The plaintiffs' property adjoins one of the approaches on the Oakland side of the tunnel. The basic theory of plaintiffs' pleadings is that the defendants, in constructing the approach in question and on land immediately adjacent to the property of plaintiffs, cut through a hill and made a deep excavation, with the result that plaintiffs' property was left unsupported, and has partially slipped into the excavation.

The original complaint was filed October 20, 1941. Defendants demurred. The demurrers were sustained with leave to

amend. A first amended complaint was filed May 14, 1943. Defendants demurred generally and specially. Before these demurrers were heard the following situation developed. In June of 1944 plaintiffs. moved the trial court for leave to file a proposed second amended complaint, which was erroneously designated ''First Amended Complaint.'' Defendants opposed the motion and promptly moved to have their pending demurrers heard. By stipulation it was agreed that the two motions should be heard on August 29, 1944, and they were argued on that date. At the conclusion of the argument the court ruled that plaintiffs' motion to file the second amended complaint should be denied, and that the demurrers of the four defendants should be sustained, plaintiffs being granted 60 days to amend. Plaintiffs' counsel then frankly stated: ''If the Court please, it will be impossible for plaintiffs to file any complaint setting forth matters which show that plaintiffs have filed timely claims as required by the Claims Statutes [the filing of such claims having been defectively alleged in the original and first amended complaints, and one of the main grounds of the demurrers of the city and two counties being that the complaints failed to show the timely filing of proper claims] as I have already informed Your Honor: the fact is, no claims were filed or presented within the time specified for such presentation or filing. The most that plaintiffs can allege for causes of action is that which is alleged in the said proposed second amended complaint erroneously designated 'First Amended Complaint.' I would like to now make, for the purpose of the record, an offer to amend by serving and filing the said amended complaint.'' On the same day a minute order was made denying the motion to file the second amended complaint and sustaining the demurrers to the first amended complaint with leave to amend.

Plaintiffs argue, with considerable logic, that although the order actually made was to sustain the demurrers with leave to amend, the practical effect of the entire proceedings was to deny them the right to amend in the manner they desired, i. e., by the filing of the proposed second amended complaint. If plaintiffs are correct in this contention it has a material effect on the appeal insofar as such appeal affects the highway district. This is so because, as will later appear, while we are of the opinion that the judgment in favor of the city and two counties must be affirmed, we are of the opinion that the first amended complaint states a cause of action against the high-

way district and that, as to it, the general demurrer should have been overruled. But this defendant likewise demurred on many special grounds. Some of these grounds of special demurrer may be good. ▇ The rule is, of course, that if general and special demurrers are sustained with leave to amend, and the plaintiff fails to take advantage of the permission to amend, the judgment thereafter entered must be affirmed if any ground of the special demurrer is good. ▇ On the other hand, under the rule announced in *Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Washer* v. *Bank of America*, 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338], and other cases, it is now the rule that if a demurrer is sustained without leave to amend, it is an abuse of discretion to deny the right to amend if the only sound basis of the order is a defect challenged by special demurrer. In such a case the judgment will be reversed even though one or more grounds of special demurrer may have been good.

▇ In the present case the plaintiffs were faced with a very practical situation. They had prepared a second amended complaint. This complaint has been made part of the record on appeal and is different from the first amended complaint in several material respects. Whether they could have filed the second amended complaint without permission of the court while demurrers to the first amended complaint were pending and undetermined need not now be decided. The fact is that they proceeded by formal motion upon notice. The defendants demanded that their pending demurrers be heard. They opposed the filing of the second amended complaint. These motions were argued on the same day. Plaintiffs contend that the main problem argued was the applicability of the claim statutes to the causes of action pleaded. Be that as it may, the court was of the opinion that the demurrers to the first amended complaint were good, and so ruled. But at the same time it refused to permit the plaintiffs to file their proposed second amended complaint. It never passed on the sufficiency of that complaint. Its allegations have never been challenged by defendants. The attorney for plaintiffs then very fairly stated to the court that so far as the claim statutes were concerned he could not truthfully allege compliance. He then told the court that "the most that plaintiffs can allege for causes of action is that which is alleged in the said proposed second amended complaint." Thus, he informed the court

that the only amendments he desired to make were set forth in this proposed pleading. In that pleading there is no reference to compliance with the claim statutes. He formally requested permission to file the second amended complaint. The record does not disclose a formal ruling upon this request, but it does show the entry of a minute order filed the same day denying permission to file the second amended complaint. Defendants urge that, regardless of the rulings made by the trial court, inasmuch as it had also given plaintiffs permission to amend, plaintiffs, any time within the 60 days granted, could have filed the second amended complaint. Even if it be assumed that this could have been done, such action, in view of the formal order of the court denying permission to file the proposed pleading, would have been wasted effort. Plaintiffs reasonably were entitled to believe that if they filed their proposed pleading, demurrers thereto would be sustained. In fact, the rulings of the trial court reasonably can be explained only on the theory that it believed that neither the first amended or proposed unfiled second amended complaint stated a cause of action against any of the defendants. Plaintiffs were in the position of having been told by the trial court that the first amended complaint was defective and had been denied permission to file the pleading that they believed cured the defects. Thus the permission to amend that was made part of the order was in fact granted only if they desired to amend in some way differently from the amendments set forth in the proposed second amended complaint. Plaintiffs are clearly entitled to have the trial court pass upon the sufficiency of the allegations set forth in the proposed second amended complaint. This right has been denied them. It would be a denial of justice to hold now that, although the first amended complaint states a good cause of action against the highway district, inasmuch as it may be subject to several grounds of special demurrer, the judgment must be affirmed, without giving plaintiffs the chance to amend so as to cure these defects, where plaintiffs have prepared a proposed amended complaint but have been denied permission to file it. Under the circumstances we must apply the rules applicable to appeals where plaintiffs have been denied the right to amend.

The only pleadings that are before us for review are the first amended complaint and the demurrers thereto. This is now conceded by all concerned. The first amended complaint

is a rather lengthy document. So far as pertinent here it alleges the corporate existence, rights and powers of plaintiff Veterans' Welfare Board, and then alleges that plaintiff Fred Beck under a contract of repurchase is and has been purchasing from the board since May 5, 1937, a piece of described real property located in Oakland. The complaint then sets forth in detail the formation and subsequent reorganization of a joint highway district to construct a public highway and tunnel in Alameda and Contra Costa counties. The complaint sets forth how the plans were prepared, how the project was financed, and how constructed. The district prepared the plans and specifications and generally supervised the financing and construction. The actual construction work was done by the defendant, The Six Companies, who was engaged by the other defendants for this purpose. This defendant is not involved on this appeal.

The first amended complaint then attempts to set forth two causes of action. The first is based on the alleged negligence of defendants. It alleges that within three years preceding the date this action was commenced (the original complaint was filed October 20, 1941) defendants caused damage to the property of plaintiffs which resulted from an improper cut and excavation on land to the rear of plaintiffs' land, and immediately adjacent thereto and on which plaintiffs' land was dependent for lateral support; that such damage and injury was proximately caused by excavations negligently made by defendants in constructing the approach and entrance to the low level tunnel, particularly in cutting through a large hill which adjoined plaintiffs' property in such a negligent manner as to leave an unsupported cut which was almost perpendicular; that because of this cut the plaintiffs' land has tended to slip, slough and slide away, leaving the real property of plaintiffs without adequate lateral or subjacent support; that on or about March 5, 1940, and subsequent to the completion of defendants' excavations, the soil embankment in question slipped, sloughed and slid away to such an extent that large portions of the yard and gardens of plaintiff were caved in and destroyed and the foundations for the house on plaintiffs' property were so seriously damaged as to render the house unsafe and unfit for habitation; that since March 5, 1940, to date the damage to plaintiffs' property has been continuous and progressive in character and has resulted from the act of defendants in leaving an open, unprotected

and unsupported cut adjacent to said real property; that plaintiffs' land has gradually slipped, slid and fallen away and plaintiffs' house has been cracked and damaged to such an extent that plaintiffs have been forced to install additional supports, drains and gutters at great expense; that said house is in constant danger of slipping off its foundations and sliding down into the cut made by defendants.

The second count of the first amended complaint is not based upon negligence at all but is based upon the theory that defendants' acts amounted to a taking and damaging of plaintiffs' property without payment of compensation and without due process. It should be here mentioned that the proposed second amended complaint drops the cause of action based on the theory that the excavation was negligently made. In a first cause of action it alleges a damaging of their property because of the claimed slipping and sliding of such property, and the second cause alleges that plaintiffs' property was taken by defendants.

We are of the opinion that plaintiffs have not stated, and in view of their admissions cannot state, a good cause of action against either of the two defendant counties. It is our view that there are certain claim statutes applicable to both causes of action pleaded and that it is indispensable to such actions that timely claims be filed. The first amended complaint pleads an admitted defective compliance with the claim statutes, and counsel have admitted that no claims were filed or presented within the time and in the form specified in such statutes. The proposed second amended complaint makes no reference to compliance with the appropriate claim statutes.

The first amended complaint first pleads a cause of action based upon negligence; the second for inverse condemnation for either a damaging or a taking of private property for public use. Insofar as the complaint is based on the theory of negligence, and that the damage resulted from the defective condition of public property, without reference to the constitutional provision relating to the taking of property for a public use, there can be no doubt, and no serious contention is made to the contrary, that Statutes of 1931, chapter 1167, page 2475, Deering's Gen. Laws, Act 5149, requires the filing of a claim. Section 1 of Act 5149 provides: ''Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works

or property, a verified claim for damages shall be presented in writing and filed with the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received.'' Admittedly, there was no compliance with this statute. It is obvious, therefore, and plaintiffs make no serious contention to the contrary, that, insofar as the complaint is based on the theory of damage caused by the defective condition of public property, without regard to any theory of inverse condemnation, the complaint fails to state a cause of action against the two counties.

But when we come to that phase of the complaint based on the theory of an inverse condemnation different rules are applicable. Article I, section 14 of the Constitution, provides in part: ''Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner. . . .'' It will be noted that the Constitution applies to both a taking or damaging. It is a well settled and admitted principle of law that a cause of action for either a taking or damaging of private property under the Constitution is subject to the operation of a claim statute or charter provision, provided the terms thereof are broad enough to embrace it. (*Natural Soda Prod. Co.* v. *City of Los Angeles,* 23 Cal.2d 193 [143 P.2d 12]; *Miramar Co.* v. *City of Santa Barbara,* 23 Cal.2d 170 [143 P.2d 1]; *Powers Farms* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123 [119 P.2d 717]; *Davis* v. *East Contra Costa Irr. Dist.,* 19 Cal.2d 140 [119 P.2d 727]; *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]; *Crescent Wharf etc. Co.* v. *Los Angeles,* 207 Cal. 430 [278 P. 1028]; *Los Angeles Athletic Club* v. *Long Beach,* 128 Cal.App. 427 [17 P.2d 1061]; *Sala* v. *City of Pasadena,* 162 Cal. 714 [124 P. 539]; *Ghiozzi* v. *City of South San Francisco,* 72 Cal.App.2d 472 [164 P.2d 902].) The controversy in most of the cases has been over the question of interpretation, that is, whether the terms of a particular statute or charter provision are broad enough to include actions in inverse condemnation, or are limited to actions where the gravamen of the action is negligence or contract. There has been a wide difference of opinion in the Supreme Court as to whether Act 5149, *supra,* or charter provisions with similar

language, apply to inverse condemnation actions at all. (See concurring and dissenting opinions in *Miramar Co.* v. *City of Santa Barbara*, 23 Cal.2d 170, 177, 180 [143 P.2d 1]; see, also, *Ghiozzi* v. *City of South San Francisco*, 72 Cal.App.2d 472 [164 P.2d 902], wherein a petition for hearing before the Supreme Court was denied, but three justices voted for a hearing.) The majority of the court has held that Act 5149 is applicable to inverse condemnation actions, at least where they are based on a damaging as distinguished from a taking. But it would seem that the question as to whether Act 5149, or charter provisions containing similar language, apply at all to a taking of real property has been left open. In all of the cases, however, in which the judges have disagreed, the disagreement has not been over the principle that a claim statute constitutionally can apply to a condemnation proceeding. That principle is admitted by all. Were Act 5149 the only claim statute involved in the present proceeding it would be necessary to analyze the complaint to ascertain whether the cause of action was for a damaging or taking, and, if the latter, it would be necessary to determine whether Act 5149 is applicable. While it would appear that there was no taking here inasmuch as no title has passed to the counties or district and that the essence of the action is for a damaging of plaintiffs' property (and therefore Act 5149 according to the majority ruling of the Supreme Court is applicable), it may be assumed that the complaint also pleads a cause of action for a taking, and also it may be assumed that Act 5149 is not applicable to a taking. There is another claim statute applicable to counties alone that clearly applies whether the action be one for a damaging or for a taking. Section 4075 of the Political Code was amended in 1931 to provide in part: "All claims against any county . . . *whether such claim be founded upon contract, express or implied, or upon any act or omission of the county* . . . shall be presented to the board of supervisors as herein provided before any suit may be brought on any such claim, and no suit shall be brought on any such claim until said claim has been presented as herein provided and rejected in whole or in part. . . ." (Italics added.) This and the following sections provide the form of such claim, the time within which it must be filed, and the time within which the board of supervisors must act. It is quite clear that this claim statute is broad enough to include

inverse condemnation cases within its terms. None of the cases cited, *supra,* involved section 4075 of the Political Code or any provision as broad. There is at least one case directly in point—*Rhoda* v. *County of Alameda,* 134 Cal.App. 726 [26 P.2d 691]. The action in that case was for damages for injury alleged to have been done to certain property of plaintiff by the county when it caused the Webster Street bridge between Oakland and Alameda to be removed and a tube constructed in its place. The cause was tried and judgment entered for defendants. The trial judge granted a new trial. From this order the defendants appealed. Solely on the ground that the pleadings and evidence failed to show that plaintiffs had filed or presented a claim as required by section 4075 of the Political Code the order was reversed. After quoting section 4075, the court stated (p. 734) : ''The section as so amended is broad enough to require the presentation of a claim for the damages herein sued for as a condition precedent to suit.'' And again at page 736 it is stated: ''The requirement of the filing of a claim by respondents as a condition precedent to suit falls well within this legislative power. There is no pleading or proof that any claim was filed and on this ground we must hold that the evidence was insufficient to support a judgment in respondents' favor. . . . we are reversing the order granting a new trial on the sole ground that there was no pleading or proof of the presentation and rejection of a claim as required by sections 4075 and 4078 of the Political Code.'' There are other cases where it has been held that a particular claim statute or charter provision containing language not substantially different from that contained in section 4075 of the Political Code is applicable to inverse condemnation proceedings. (See *Crescent Wharf etc. Co.* v. *Los Angeles,* 207 Cal. 430 [278 P. 1028] ; *Los Angeles Athletic Club* v. *Long Beach,* 128 Cal.App. 427 [17 P.2d 1061] ; *Musto-Keenan Co.* v. *City of Los Angeles,* 139 Cal.App. 506 [34 P.2d 506] ; *Young* v. *County of Ventura,* 39 Cal.App.2d 732 [104 P.2d 102] ; see, also, *Artukovich* v. *Astendorf,* 21 Cal.2d 329 [131 P.2d 831] ; *Parker* v. *County of Los Angeles,* 62 Cal.App 2d 130 [144 P.2d 70].) The fact that a state agency is involved as a plaintiff in no way affects the rule that the filing of a claim in such actions against counties is essential. (*State Dept. of Pub. Health* v. *Imperial County,* 67 Cal.App.2d 244 [153 P.2d 957].)

The plaintiffs concede that if the rule of the Rhoda case,

*supra*, is still the law, the filing of the claim required by section 4075 is a condition precedent to the bringing of their action against the two counties, but they urge that the recent decisions of the Supreme Court indicate a change in attitude toward these claim statutes, and they suggest that if the Rhoda case has not already been overruled it should be overruled in this case. While it may be true that the recent decisions of the Supreme Court, some of which have already been cited, indicate a change in attitude toward claim statutes in general on the part of that court, no case to which we have been referred has ever challenged the rule that a claim statute, if broad enough in its terms, applies to inverse condemnation proceedings, whether the action involves a damaging or a taking. In fact, all of the recent cases, in express terms, have restated that rule.

Plaintiffs place considerable reliance on the case of *Bacich* v. *Board of Control*, 23 Cal.2d 343 [144 P.2d 818]. There the action was brought under article I, section 14, of the Constitution, against the state for diminution in value of property caused by the construction of the San Francisco-Oakland Bay Bridge. No claim was filed. It was urged that section 688 of the Political Code required the filing of such a claim in actions against the state. That section provides in part: "Any person who has, or shall hereafter have, a claim on express contract or for negligence against the State" must file a claim. The court properly held that a cause of action for inverse condemnation is based neither on "express contract" nor "negligence" and that therefore the statute has no application. Plaintiffs point to the language in section 4075 of the Political Code which requires claims to be filed "whether such claims be founded upon contract, express or implied," and urge that section 4075 is no broader than section 688, and should be construed to have no broader effect. The obvious fallacy in plaintiffs' argument is that it completely disregards the further phrase in section 4075 but not contained in section 688 which requires claims to be filed where the claim is based "upon any act or omission of the county." These words are clearly broad enough to include actions for inverse condemnation. This conclusion makes it unnecessary to pass upon the debatable question as to whether inverse condemnation actions fall within the "implied contract" provision of section 4075. In *Crescent Wharf etc. Co.* v. *Los Angeles*, 207 Cal. 430 [278 P. 1028], it was held that actions

under article I, section 14 of the Constitution are based upon an implied promise to pay. This holding was questioned in *Rose* v. *State of California*, 19 Cal.2d 713, at page 724 [123 P.2d 505]. Without reference to that controversy, it is clear that an action in inverse condemnation is an action based upon some i. e., ''any act or omission'' on the part of the county.

From what has been said it is obvious that the demurrers of the two counties were properly sustained.

There remains for consideration the question as to the propriety of the judgment in favor of the joint highway district. It is conceded that there is no claim statute applicable to this entity, and that if its demurrer was properly sustained some other ground than the claim statute must be found. It is also conceded that this entity possesses the power of eminent domain. (St. & Hy. Code, § 25050, subd. (d) ; Stats. 1931, chap. 1025, § 2, p. 2073.)

This defendant asserts that the first amended complaint shows that the causes of action pleaded were barred by the provisions of section 338(2) of the Code of Civil Procedure requiring actions for trespass upon or injury to real property to be brought within three years. In this connection certain dates must be kept in mind. The pleadings disclose that the excavation made by defendants on the property adjoining that of plaintiffs was made in August of 1935. But the first amended complaint alleges that it was not until March 5, 1940, that the plaintiffs' property was injured and started to slide into the excavation. The original complaint was filed October 20, 1941. The theory of the first amended complaint is that no damage was suffered until March 5, 1940, when, as a result of the original construction of the excavation, damage was first suffered by plaintiffs. Moreover, the complaint alleges that the damages have been continuous and progressive since that date. It is obvious that at the earliest, the cause of action did not arise until March 5, 1940. It is immaterial, therefore, whether the three-year statute contained in section 338, subdivision 2, or the five-year statute required to get title by adverse possession (see *Katenkamp* v. *Union Realty Co.*, 36 Cal.App.2d 602 [98 P.2d 239], 11 Cal. App.2d 63 [53 P.2d 387] ; *Martin* v. *Western States G. & E. Co.*, 8 Cal.App.2d 226 [47 P.2d 522]) applies—in either event the action was filed in time.

Much is made of the fact that the superseded original

complaint did not allege that the damage first occurred on March 5, 1940, that allegation first appearing in the first amended complaint. This defendant urges that since the first amended complaint was not filed until May 14, 1943, that is the date that must be considered in determining whether the statute has run. The argument is unsound. The original complaint may have defectively alleged the cause of action, and this was corrected in the first amended complaint, but it is elementary that as to any particular cause of action it is the date of the filing of the original complaint setting forth that cause of action that controls so far as the statute of limitations is concerned.

The date the excavation was made—August, 1935—is likewise immaterial. No cause of action arose by the construction of the excavation alone. All of the work was done by defendants on their own land. There was no trespass in injury to plaintiffs' land at the time of the excavation. The injuries complained of did not occur, according to the allegations of the first amended complaint, until March 5, 1940. They were consequential injuries. That is the date from which the running of the statute must be computed.

The argument that the damage here, if any, was the result of the exercise of the police power, needs but passing comment. There is no reason to invoke the doctrine of the police power to protect public agencies in those cases where damage to private parties can be averted by proper construction and proper precautions in the first instance. (*House* v. *Los Angeles County Flood Control Dist.*, 25 Cal.2d 384 [153 P.2d 950].)

This defendant also argues that the first amended complaint fails to state a cause of action in that it attempted to charge all the defendants as joint tort feasors, but failed to allege that any of the defendants, and particularly it, acted unlawfully. It is urged that ''by attempting to join these creatures of the law as joint tort feasors, without specifically alleging that the defendant public agencies alleged to have acted jointly, did so unlawfully in excess of their respective powers, the plaintiffs failed to state a cause of action.'' (Respondent Joint Highway District Brief, p. 21.) The answer to this contention is that at the present time this defendant alone, of all the public agencies named as defendants, remains in the case as a defendant. The allegations of joint action are immaterial. Moreover, the plaintiffs have alleged in great detail how this defendant was organized and

what it did in the construction of this project. Those allegations are sufficient to show that this defendant authorized the making of the excavation that injured plaintiffs. This was done, if the allegations of the complaint are true, in violation of the constitutional rights of plaintiffs. The allegations that the defendants acted jointly are immaterial. The statute under which this project was constructed (Sts. & Hy. Code, § 25050), the terms of which we take judicial notice, permitted them to act jointly. The unlawful nature of the acts performed clearly appears from the allegations. The district has no power to violate, without payment of compensation, the property rights of plaintiffs. The allegation that such rights were violated without payment of compensation is necessarily a direct allegation that the district acted unlawfully.

This defendant next contends that the first amended complaint failed to allege whether or not the work was done in accordance with the plans and specifications, or that the public agency negligently departed 'from the plans and specifications. It is urged that such allegations are indispensable. Some attempt was made to correct this in the proposed second amended complaint. (See Trans., pp. 269, 270.) More point to this contention might exist if the alleged defects were being urged by The Six Companies, the actual contractor. If the contractor follows the plans and specifications furnished by the public agency, and damage results to the adjacent property, the public agency and not the contractor is liable. (*Marin Mun. W. Dist.* v. *Peninsula P. Co.*, 34 Cal.App. 2d 647, 652 [94 P.2d 404]; see, also, *De Baker* v. *Southern Cal. Railway Co.*, 106 Cal. 257, at p. 284 [39 P. 610, 46 Am. St. Rep. 237].) Whether the contractor followed the plans or specifications or not, if plaintiffs' constitutional rights have been adversely affected they are entitled to compensation from the public agency authorizing and supervising the work. What the rights of the plaintiffs may be against The Six Companies are not involved on this appeal.

This defendant also insists that the first amended complaint failed to state a cause of action in that it failed to plead that plaintiffs were the owners of the real property in question. This defendant contends that a direct and unequivocal averment of ownership is indispensable, and that this is so whether the complaint is based upon damage caused by this defendant's negligence or whether it is an inverse condemnation proceeding. The questioned pleading is replete with

such allegations as "defendants did cause damage and injury to the above described property of plaintiffs" (Trans. 200); and "which adjoined plaintiffs' said real property" (Trans. 201); and "leaving the real property of plaintiffs without adequate lateral or subjacent support" (Trans. 201); and "plaintiffs' land has gradually slipped" (Trans. 201), etc., but this defendant urges that this is merely inferential and indirect pleading of the ultimate fact and is not sufficient. It is quite obvious that no one could possibly interpret this pleading to mean anything else but that plaintiffs are the owners of the property. While it would undoubtedly have been better pleading practice to have alleged the ultimate fact of ownership more directly, it certainly would be a miscarriage of justice to hold that where the pleading is clear enough so that no one could possibly misinterpret it, a demurrer may be sustained because the pleading is not a model one.

It is also urged that the complaint is defective in that it fails to allege the value of the property taken at the time of the alleged taking. Both the first amended complaint, and the proposed second amended complaint (where the value at the time the excavation was made is set forth) are defective in this respect. (See 10 Cal.Jur. § 128, p. 439.) This is the type of allegation, however, that obviously can be corrected by amendment, and such permission should be granted.

Other minor objections to the pleading have been made. All of them may be corrected by amendment.

From what has been said it is obvious that, so far as the highway district is concerned, it was error to deny the plaintiffs the right to file their proposed second amended complaint, which, in effect, denied to them the right to amend. The first amended complaint states a cause of action against this defendant.

The judgment in favor of the city of Oakland, the county of Alameda and the county of Contra Costa is affirmed; the judgment in favor of Joint Highway District No. 13 is reversed, with instructions to the trial court to permit plaintiffs to file their proposed second amended complaint, or, if they be so advised, to otherwise amend their complaint.

Knight, J., and Ward, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 6, 1946.