WILLIAM R. PHILLIPS et al., Respondents, v. CHARLES BURKE et al., Appellants.

Busick & Busick and Floyd H. Pettit for Appellants.

Murle C. Shreck for Respondents.

PEEK, J.—This is an appeal by defendants from a judgment decreeing that plaintiffs have an easement for the discharge of surplus irrigation water over and across the lands of defendants; that defendants be enjoined from obstructing the flow of such water; and, that plaintiffs have damages for loss they suffered by reason of defendants' obstruction of the flow of said water.

The evidence shows that plaintiffs are the owners of certain lands in Sutter County lying immediately to the east of and at a higher elevation than the adjoining lands of defendants. Both parcels are a part of the same watershed, whose waters for many years have drained from east to west by meandering natural streams and watercourses or channels of varying widths and depths. One of such channels existed at the southerly boundary and one at the northerly boundary of plaintiffs' land. As the waters accumulate in the area to the east of defendants' land they flow through said channels across said land, thence west to a canal of Reclamation District 1000, and finally discharge into the American River. From time to time during the past 20 years, various tracts of land in this vicinity have been leveled for irrigation purposes, and the streams have been straightened or altered, but the general course and capacity thereof have not been changed. Irrigation waters have, by drainage, seepage or other means, flowed in said streams during the irrigation season, particularly during the months of April to November. During the year 1951, defendants leveled their land, and in so doing filled the natural watercourses on said land and replaced the same with ditches. The ditches so dug by defendants were insufficient to carry off the surface and drainage waters accumulating in the lands to the east of defendants' property. Prior to the commencement of this action defendants erected barriers across two streams on their land, thereby preventing such waters from flowing through said watercourses. The barriers caused the water to back up upon plaintiffs' land, resulting in damage to them in the sum of $300. The surplus irrigation water accumulating on plaintiffs' land and that of other owners to the east of defendants was substantially less than the surface and rain water and had never overflowed the banks of any of the channels or watercourses on defendants' land. According to the plaintiffs, the amount of the irrigation run-off from their land was approximately 4,000 gallons per hour. Additionally there was testimony by witnesses for both parties, as well as by them themselves, to

the effect that the growth of tules and other vegetation had been stimulated by the irrigation run-off, but no one testified that any of such growth was on defendants' land. There was also testimony that because of the irrigation run-off it was impossible to farm defendants' land as before. Specifically defendant Charles Burke testified that such waters had, in effect, so divided his land that he was compelled to farm it as though it were three separate parcels.

In substance the findings of the court follow the evidence as summarized. The findings pertinent to the questions now raised are that the flow during the rainy season was far greater than the artificial flow during the summer months, and that such artificial flow had not exceeded the capacity of such streams; that the ditches dug by defendants as a part of their leveling operations were of insufficient capacity to permit the free flow of drainage waters; that had defendants not interfered with such natural watercourses, no damage would have occurred; that the barriers erected by defendants prevented such irrigation and drainage waters from flowing through said watercourses over and across the lands of defendants; that for more than five years prior to the institution of the action, and particularly during the period between April and November, plaintiffs had drained approximately 4,000 gallons of water per hour into said watercourse; and that "plaintiffs use of said easement" has at all times during said period been "continuous, open and notorious, hostile to the defendant owners, exclusive and under a claim of right . . . uninterrupted and adverse. . . ."

The judgment thereafter entered specifically adjudged plaintiffs to have an easement by prescription over the lands of the defendants for the discharge of surplus irrigation water. The defendants were ordered to remove all obstructions placed by them in the natural watercourses on their land; to restore such natural watercourses to their original size and capacity, or in the alternative to construct other ditches or channels across their lands so that the water from the channels and streams on the northerly and southerly boundary lines of plaintiffs' land would flow across defendants' land as previously; that such ditches or channels so constructed should have the capacity to carry the same amount of water as the original natural watercourses and streams carried before their obstruction by defendants; and enjoined defendants from in any way interfering with the free flow on, over and across the lands of defendants of the

surface and irrigation waters flowing in said natural watercourses from the lands of plaintiffs.

Defendants now contend that the evidence is insufficient to sustain the finding that natural watercourses existed across their lands. ■ As noted by the court in *Costello* v. *Bowen,* 80 Cal.App.2d 621, at 627 [182 P.2d 615]:

"It is difficult to define the term 'water course' in language that is uniformly applicable, since the topography and surrounding conditions which contribute to its existence vary greatly. In general terms it has been said to consist of a running stream of water following a regular course or channel and possessing a bed and banks. [Citing cases.] It is the channel through which the water of a particular district or watershed usually or periodically flows. While it is ordinarily defined as a stream, containing a definite bed, banks and channel, which flows into some other river, stream, lake or the sea, none of those characteristics is an absolute fixed factor. A watercourse may exist even though it serves as a mere channel by means of which a particular watershed is drained, and although it may be dry in certain seasons . . ."

It has further been held that a particular channel or watercourse "is natural in the sense that it was made by the waters themselves and not by man." The importance lies not in its manner of creation, but rather in the fact that for a long period of time the watershed has naturally drained into that channel. (*Weck* v. *Los Angeles County Flood Control Dist.,* 80 Cal.App.2d 182, 193 [181 P.2d 935].)

By their next argument defendants would have this court reverse its former decisions in *Fell* v. *M. & T. Inc.,* 73 Cal.App.2d 692 [166 P.2d 642] (hearing in Supreme Court denied), and *Cheesman* v. *Odermott,* 113 Cal.App.2d 26 [247 P.2d 594] (hearing also denied). Their contention is that plaintiffs are not entitled to discharge *any* artificial irrigation waters through the natural watercourses across the lands of defendants in the absence of any right acquired by prescription.

■ The injunction herein restraining defendants from in any way interfering with the right of plaintiffs to discharge surface and irrigation waters flowing in the natural watercourses across defendants' lands was proper, and is in conformity with the law as enunciated in the Fell and Cheesman cases. However, plaintiffs' right as so recognized must clearly be limited to a use which would be reasonable and noninjurious.

In their reply brief appellants contend that this part of the

judgment is erroneous in specifying that the ditches must be of such capacity as to carry a volume in summer equal to the winter flow. It is their position that winter flow is no measure of reasonable and noninjurious summer use, and thus the right of plaintiffs has not been limited; that the farming operations of defendants will be seriously impaired by the maintenance of ditches across their lands the year around, and that the judgment does not conform to the law as set forth in the cited cases.

The answer to this would seem to lie in the plain meaning and logic of the Fell and Cheesman decisions. ▪ The right to discharge surplus irrigation waters would of necessity be used primarily during the summer months, there being little if any need to irrigate during the winter season. If the right exists, it must also be for use during the summer months. Thus to argue, as defendants do, that for the use to be reasonable and noninjurious it must be limited to use outside of the summer irrigating season, is but to wholly deny the right.

Finally appellants contend that the evidence is insufficient to establish the creation of an easement by prescription for the flow of excess artificial irrigation water over and across defendants' lands.

With this we are inclined to agree. As recognized in *Fell v. M. & T. Inc.*, *supra*, at page 695, the privilege of turning imported water into a natural channel may ripen into an easement but only if there should be an interference with the rights of another. In that case, however, there was a showing that the discharge of irrigation water into a natural watercourse caused substantial damage to the lower owner. Here, although there was some evidence that the growth of tules and other vegetation had been stimulated by the irrigation run-off, it was not shown that such growth was on the land of defendants nor that defendants had suffered any damage by reason thereof, and the court did not so find. To the contrary, the court specifically found that whatever damage if any was suffered by defendants was the result of their own acts in leveling their land, obliterating the natural watercourses and failing to provide compensating ditches of sufficient capacity. The present case presents a factual situation more closely analogous to that which was before this court in the Cheesman case. There likewise the injuries complained of by defendants would not have occurred save for the leveling of their land, the destruction of the natural watercourses and the digging of inadequate ditches.

It necessarily follows that in the absence of a showing that the use made by plaintiffs of the natural watercourses in question caused damage to defendants, paragraph III of the judgment, wherein it is adjudged that plaintiffs have an easement over the lands of defendants for the flow of surface waters, must be stricken.

As so modified, the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 17, 1955.

[Civ. No. 8548.   Third Dist.   June 20, 1955.]