[Civ. No. 32004. First Dist., Div. Three. Nov. 26, 1974.]

AMADOR VALLEY INVESTORS et al., Plaintiffs and Respondents, v. CITY OF LIVERMORE, Defendant and Appellant.

## Counsel

Gudmundson, Siggins & Stone, W. W. Gudmundson and Ross R. Ryder for Defendant and Appellant.

Crosby, Heafey, Roach & May, Edwin A. Heafey, Jr., and John A. Reding for Plaintiffs and Respondents.

## Opinion

**BROWN (H. C.), J.**—This is an appeal from a judgment in favor of the Amador Valley Investors (hereinafter Amador) for damages in the sum of $93,182.14 resulting from the discharge of treated sewage water into a creek which flowed through Amador's property.

The trial court found in relevant part as follows: Since 1964, Amador has been the owner of some 300 acres of land in the Livermore Valley of Alameda County on which it proposed to construct a number of homes. The Alameda County Flood Control and Water Conservation District, in order to protect against flooding, required Amador to widen and deepen certain creeks on its property as a prerequisite to approval of its construction plans. The Alameda County Flood Control and Water Conservation District advised Amador that the work of widening and deepening the creeks could be undertaken after the rainy season when the winter storm runoffs would cease and the creek beds would be dry. Amador was prepared to begin excavation and construction in the Arroyo Mocho in May of 1967, but was confronted with approximately 2 million gallons daily of treated sewage water discharged from the Livermore Sewage Treatment Plant and was thereby prevented from beginning construction and thereafter performing the construction in the manner which they had intended.

In June 1967, representatives of Amador and the City of Livermore (hereinafter City) met and the City was informed of the fact that the discharge was preventing Amador from carrying out its construction as planned. The City, however, did not stop its discharge, although temporary alternatives were available, such as irrigation pipe and spraying. Amador's work on the creeks was pursued but at considerably greater expense due to the water in the creeks. These increased expenses constituted the damages of $93,182.14 which were awarded to respondents.

The City contends that the judgment should be reversed for the following reasons: (1) the action was barred by the statute of limitations; (2) the con-

duct of the City in discharging the sewage water into the creeks was not actionable; (3) the discharge of the sewage water was not the proximate cause of the damages; (4) Amador was precluded from recovery by its own conduct. Amador also contends that the court erred in its award of damages, incorrectly calculated the date upon which interest accrued and erred in its declaratory judgment as to future conduct and liability of the City.

■ We do not agree that Amador's claim was barred by the failure to file a timely claim but conclude that Amador may recover for damages sustained within one year prior to the filing of the claim.

In order to file an action for damages, Amador was required to present a claim to the public entity not later than one year after the accrual of the cause of action. (Gov. Code, §§ 900, 911.2.)

Appellant calls attention to the case of *Powers Farms* v. *Consolidated Irr. Dist.* (1941) 19 Cal.2d 123 [119 P.2d 717], in which damage to land was caused by water seeping from irrigation canals. The dispositive issue of the case was whether or not a claim was required to be filed. In concluding that the failure to file any claim at all required a reversal of the judgment, the court by way of dictum stated at page 129: "Where the time and extent of injury are uncertain, a statutory period of limitation begins to run when the fact that damage is occurring becomes apparent and discoverable, even though the extent of the damage may still be unknown. (Citation.)."

The California Supreme Court refused to apply this dictum to defeat the cause of action in two cases upon which Amador relies. In *Natural Soda Prod. Co.* v. *City of L. A.* (1943) 23 Cal.2d 193 [143 P.2d 12], despite reliance upon *Powers* by the defendant, it was held that where there was a continuing injury, the starting point was the completion of the injury. In that case, the defendant, on February 6, 1937, opened certain gates causing a large amount of water to flow into a formerly dry lake bed and continued to discharge water into the lake bed intermittently until July 1, 1937. Again in *Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363 [5 Cal.Rptr. 692, 353 P.2d 300], the court refused to apply the dictum of *Powers* to a situation where there was a continual subsidence of plaintiff's building due to destruction of lateral support. The court stated: "[T]he rule is that a new and separate cause of action arises with each new subsidence, with any applicable limitations statute running separately for each separate subsidence. (Citations.) Therefore, the fairest and most workable rule with respect to the filing of claims and as to the items of damage for which recovery may be had once a claim has been filed appears to be that which governs in the pension cases, viz., plaintiff may recover on those items of damage which accrued within the applicable time period (here, one year) prior to the

date of filing of the required claim and also, without the necessity of filing successive claims, on such items as accrue after that date." (54 Cal.2d at p. 369.)

The court again considered the timeliness of claims against a public entity in *Pierpont Inn, Inc.* v. *State of California* (1969) 70 Cal.2d 282 [74 Cal. Rptr. 521, 449 P.2d 737]. In *Pierpont Inn,* the damage resulted from the taking of land for a freeway. In holding that the claim was timely if filed prior to the completion of the project, the court expressed the opinion that *Bellman* represented the current view of the timeliness of a claim and the items recoverable. (70 Cal.2d at p. 290.)

Filing of a claim may not be postponed after the date when the damage becomes apparent and discoverable *unless* the invasion or injury is continuing or repeated. For example, in *Mosesian* v. *County of Fresno* (1972) 28 Cal.App.3d 493 [104 Cal.Rptr. 655], an action in inverse condemnation was brought to recover for the action of the county in creating a settlement pond on plaintiff's land. The court was of the opinion that the time for filing could not commence to run later than the date upon which the pond was completed. Later routine maintenance and deepening of the existing ponding area did not bring the case within the concept articulated in *Pierpont Inn* and *Bellman.* (28 Cal.App.3d at pp. 501-502.)

Appellant seems to take the view that the action causing damage was the creation of the system by which a continuous flow of treated sewage was the end result. This is too narrow a view and an incomplete analysis. In *Bellman,* the court pointed out that "a cause of action for destruction of the lateral support emanates not from the excavation standing alone, but from the subsidence" (*Bellman* v. *County of Contra Costa, supra,* 54 Cal.2d at p. 369) and noted that a new and separate cause of action arises with each subsidence. Here, the cause of action emanated from each discharge for each discharge not only enhanced damage already done but added new damage, requiring as it did a response from Amador. It is the cost of these responses of Amador which furnish the primary items of damages for which recovery was allowed. It is concluded that the case is one in which the rule of *Bellman* applies and that, therefore, Amador's action was timely to cover damages accruing within one year prior to the filing of the claim.

Here, also, the parties disagree. Amador claims that the first damage was sustained on July 17, 1967, while the City claims the first damage occurred on May 16, 1967, and other damages on June 6 and 9. Plaintiffs' Exhibit 30 is a list of items labeled "Cost of Pumping Water Out of Mocho—1967 through June 11, 1968." It indicates that three items were for work performed prior to June 28, 1967, which would be one year before the claim

was filed. The amount spent for these items according to the list is $244.44. Damages must be recomputed to exclude items prior to June 28, 1967.

The City next contends that its conduct in dumping the treated sewage water in the creek was not actionable. In summary, the City's position is that (1) there was no negligence on its part in carrying out its sewage disposal projects; and (2) its acts are privileged.

■ We do not agree that the fact that the City's water project was reasonable or carefully considered and carried out means that no action for negligence will lie. The negligence concept in this case is very like that present in the case of *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 [289 P.2d 1], where the plaintiff was permitted an action for damage caused when the defendants raised the bank of an existing ditch in carrying out storm drainage improvements. The court explained at page 286: "Here the raising of the bank is not an accident or an act in itself resulting from carelessness. It is deliberate. The damage to property in this instance resulted not from immediate carelessness but from a failure to appreciate the probability that, functioning as deliberately conceived, the public improvement as altered and maintained would result in some damage to private property." (See also *House* v. *L. A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 392 [153 P.2d 950].)

The trial court found that the City had knowledge that the plaintiffs were damaged by the presence of its treated sewage water on their property and that the discharges could have been stopped by the use of temporary irrigation pipe, spraying and other reasonable alternatives. Yet the City made no attempt to halt the discharges even after notice of the extensive damage. The evidence supported these findings. The City's director of public works and city engineer testified it would have been possible for the City to not discharge for 60 days by spraying the sewage effluent onto the land although it would have been costly to do so. There was also evidence that sewage effluent could have been held in available ponds for 10 to 20 days without any cost. Apparently no contingency plans to dispose of the treated water, other than by discharge through the waterways, were ever formulated. The City, however, contends that any alternatives suggested were not reasonable and that, furthermore, the City acted reasonably since it offered a solution to Amador and Amador accepted it and did not demand that the City pond the water or spray it onto county land. To the extent that the City contends that the alternatives of ponding or spraying were not reasonable, it is merely asking this court to reweigh the evidence. The solution offered to Amador was the loan of irrigation pipe and sprayheads so that Amador could deal with the discharged water itself. The court correctly considered this not to be a reasonable alternative since it placed upon the property owner the

burden of carrying out the City's duty to use reasonable care to dispose of its sewage without damage to private property. Furthermore, it appears that the City then did nothing more to alleviate the problem which continued to exist.

■ We also do not agree that the City was privileged to damage Amador's property without compensation. ■ There are two generally recognized exceptions to the requirement that compensation be paid for damages to property. (See Van Alstyne, *Inverse Condemnation: Unintended Physical Damage,* 20 Hastings L.J., 431, 442.) One exception applies when damage is caused in the proper exercise of the police power. (*Gray* v. *Reclamation District No. 1500* (1917) 174 Cal. 622 [163 P. 1024].) This exception, however, will not shield a public entity from inverse liability, absent a compelling emergency, where physical damage to private property could have been avoided by proper design, planning, construction and maintenance of the improvement. (See *House* v. *L.A. County Flood Control Dist., supra,* 25 Cal.2d at pp. 391-392; *Rose* v. *State of California* (1942) 19 Cal.2d 713, 730-731 [123 P.2d 505]; *Ward Concrete Co.* v. *L.A. Flood etc. Dist.* (1957) 149 Cal.App.2d 840, 847-848 [309 P.2d 546]; *Veterans' Welfare Bd.* v. *City of Oakland* (1946) 74 Cal.App.2d 818, 831 [169 P.2d 1000].)

The second exception occurs where the public entity has a "legal right" to inflict damage to the same extent as would a private person. ■ Thus, argues appellant, since any upper riparian landowner has a legal right to discharge waste water into a natural drainage channel, a public entity also incurs no liability unless the discharge overflows the bank. The upper riparian owner, however, does not have an absolute right to discharge water into a natural water course. The cases cited by the City indicate as much. Thus, in *Cheesman* v. *Odermott* (1952) 113 Cal.App.2d 26 [247 P.2d 594], the court, at page 29, agreed that the cases do not permit the use of natural water courses for the carrying of artificially originated waters, except within the limits that such use of the natural waterways be confined to reasonable, noninjurious use. The court in *Phillips* v. *Burke* (1955) 133 Cal.App.2d 700, 703 [284 P.2d 809], stated that "[t]he injunction herein restraining defendants from in any way interfering with the right of plaintiffs to discharge surface and irrigation waters flowing in the natural watercourses across defendants' lands was proper, and is in conformity with the law as enunciated in the Fell and Cheesman cases. However, plaintiffs' right as so recognized must clearly be limited to a use which would be reasonable and noninjurious." In the instant case, the court's findings that the actions of the City were not reasonable clearly indicate that the exceptions for the exercsie of police power or legal rights do not apply.

■ It is, of course, recognized that the conduct of the public entity must be shown to have been the proximate cause of the damage. (*Youngblood* v. *Los Angeles County Flood Control Dist.* (1961) 56 Cal.2d 603, 610 [15 Cal.Rptr. 904, 364 P.2d 840]; *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629, 649 [42 Cal.Rptr. 34].) Here, the City advanced the theory, supported by evidence, that the water which prevented Amador from carrying out its work emanated from an underground river known as the "upper-most aquifer."

The trial court's view of this theory is stated in its findings: "The flows on plaintiffs' property were treated water from sewage effluent, a liquid by-product derived from chemical and biological treatment. These flows were attributable to discharges from the Livermore Sewage Treatment Plant and were not from 'an upper-most aquifer.' There would not have been any Alameda County Flood Control and Water Conservation District water on plaintiffs' property but for the discharges of treated sewage water by the City of Livermore."

The City has, at most, demonstrated a conflict in the evidence which the court resolved against it. Appellant's disagreement with the trial court's resolution does not furnish a basis for a decision in its favor on appeal. "[T]he showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of the judicial action, merely affords an opportunity for a difference of opinion." (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].)

■ We have also considered the City's contentions that (1) Amador was estopped from asserting the failure of the City to devise alternate means of discharging the treated sewage water by accepting the loan of pipe and sprayers to dissipate the excess water and then failing to inform the City of the continued problems; and (2) Amador was contributorily negligent for proceeding on the assumption that the creeks would be dry in the summer. We find both contentions without merit. In answer to the argument of estoppel, we find ample evidence in the record of the City's knowledge of the continued existence of the problem through its own monitoring and investigations.

■ Appellant's position on contributory negligence is in reality an attack on the findings. The court specifically found that the portions of the Arroyo Mocho and Arroyo Las Positas owned by plaintiffs were historically dry during the summer months and that Alameda County Flood Control and Water Conservation District regularly advised contractors in the area that work in the creek systems of the Livermore Valley could be undertaken

during the summer months beginning in April. The court also found that plaintiffs reasonably relied on the above facts and on the studies of their engineers in entering into various contracts with subcontractors based on the assumption that the necessary work could be done in dry conditions. These findings are amply supported by the evidence.

In its attack on the award of damages, the City points out that there was no evidence of diminution in value of Amador's property if the work of widening and deepening had not been undertaken. Diminution in value is not to be applied inflexibly as a measure of recovery in an inverse condemnation case. (See *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 269, 270 [42 Cal.Rptr. 89, 398 P.2d 129].)

In the instant case, diminution of market value would have been of little value even to compare it to the cost of repair. The award of damages was $93,182.14. The record indicates that respondents had millions of dollars invested in the development of the area for residential homes. The property could not be developed unless the flood control work was undertaken. If the respondents had not expended the sums to mitigate their damages, they would have been unable to do the flood control work at all. Under these circumstances, the trial court was correct in awarding damages without reference to a consideration of diminution of value had the work not been done.

Appellant also urges as improper the inclusion in the award of $25,113.44 for additional expenses due to the fact that work expected to be done in dry conditions had to be done working with wet or supersaturated soil. Appellant argues that such expenses would be too speculative and remote. They were not speculative in the sense that they were items which had already been incurred. There was considerable evidence that but for the discharges of the Livermore Sewage Treatment Plant, work would have begun in April and that respondents were required to work later in the year than they would have otherwise. The items complained of are not awards of damages for work carried out during the rainy season but awards for *additional* costs due to the fact that work was done in the rainy season.

The City's contention that the court incorrectly calculated the date upon which interest accrued is without merit. The court said in *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 759 [185 P.2d 597]: "The authorities are by no means uniform in their holdings with regard to the time from which interest should be computed. [Citations.] But if the property owner is to be compensated in the full amount to which he is justly entitled, it seems apparent that as to a taking of property the same rule should

obtain as in condemnation cases, and as to a damaging of property, interest should run from the date the damage is inflicted or at least from the commencement of suit."

Because the damages were continuous through the time of trial in July 1971, no one date would accurately reflect compensation from the date of damages. It is noted, however, that the date chosen by the trial court was well after suit was filed and approximately midpoint during the period in which damages occurred. Since damages were fairly evenly and regularly incurred throughout the period, the method chosen by the trial court appears to have been fair to all parties.

We also conclude that the trial court did not err in its declaratory judgment as to the future liability of the City

The judgment contained the following order as to the future conduct and liability of the City: "Because of the continuing nature of the damage to plaintiffs' property, and in order to prevent the filing of multiple claims and multiple suits for damages, plaintiffs are entitled to declaratory judgment adjudicating that defendant City of Livermore is without right or authorization to discharge treated sewage effluent and other wastes onto the lands of plaintiffs without plaintiffs' consent and the City of Livermore will be held accountable for any damages proximately caused as a result of such discharges in the future."

Appellant contends that the portion of the judgment stating that the City will be accountable for any future damages is erroneous because it conflicts with the court's statement in its memorandum decision that it had decided not to allow a present award for future damages because "they also are too speculative." There is no conflict. The court clearly meant that the damages were too speculative only at that time and not that they would remain too speculative for a future award.

Appellant's final contention assumes what appellant proposed above, i.e., that there is no further liability possible for future damages. Assuming this, appellant applies the rule that having paid in full for any future injury, it has acquired a right to continue its activity. Such an argument must fall with the recognition that the City remains liable for any future damage. Any future discharge over appellant's land is subject to this liability.

The matter is remanded to the trial court to recompute damages to ex-

clude items of damage occurring prior to June 28, 1967. The judgment in all other respects is affirmed.

Draper, P. J., and Coughlin, J.,* concurred.

A petition for a rehearing was denied December 26, 1974, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1975.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.