671 P.2d 1107

**Delmo SMITH and Mada Smith, husband and wife, Plaintiffs-Respondents,**

v.

**KING CREEK GRAZING ASSOCIA-TION, an Idaho corp., Defendant-Appellant.**

**No. 14223.**

Court of Appeals of Idaho.

Oct. 31, 1983.

R.M. Whittier, Whittier & Souza, P.A., Pocatello, for defendant-appellant.

Randall C. Budge, Racine, Olson, Nye, Cooper & Budge, Chartered, Pocatello, for plaintiffs-respondents.

BURNETT, Judge.

The question presented is whether the owners of a farm are entitled to relief from the flooding of their fields by water originating in a spring located on higher property. The farmers, Delmo and Mada Smith, brought this action when King Creek Grazing Association improved and developed a spring on its higher ground. King Creek used the augmented supply of spring water for consumption by its cattle. During the autumn and winter, water not used by King Creek was discharged into a natural channel which crossed other properties and led to the Smiths' farm. This channel always had carried annual runoff and storm water, as well as some water from the undeveloped spring. But in 1979 and 1980, after King Creek had fully improved the spring and increased its flow, water reached the Smith farm during cold weather for the first time. There the water spread upon the fields and froze, because the Smiths had destroyed the natural channel by farming across it. The Smiths claimed that this flooding of their property during cold weather damaged the crops and interfered with proper farm management.

The district court held that the Smiths were not required to accept the burden of a water flow which had been enhanced by King Creek's improvement of the spring. The court awarded no damages because the crop loss in 1979 had resulted from unusual weather conditions as well as from the flooding, and because no crop loss had occurred in 1980 up to the time of trial. However, the court found that future crop damage from flooding was probable. The judge enjoined King Creek from continuing to allow unused spring water to flow upon the Smiths' farm except during the annual runoff. King Creek has appealed. We reverse.

I

Our first task is to identify the rules of law governing this controversy. An invasion of surface water upon one's land, caused by alteration of the natural flow on another's land, may constitute a form of nuisance. W. PROSSER, HANDBOOK OF THE LAW OF TORTS 601–02 (4th ed. 1971). However, the courts generally have not applied the sweeping principles of nuisance law to surface water cases. Instead, most courts have developed more specific rules for this category of disputes. *See* Kinyon & McClure, *Interferences with Surface Waters,* 24 MINN.L.REV. 891 (1940). Idaho has followed that pattern.

Our Supreme Court has adopted a doctrine known as the "civil law" rule of surface waters. *Dayley v. City of Burley,* 96 Idaho 101, 524 P.2d 1073 (1974). This rule, broadly stated, is that a property owner may not so interfere with the natural flow of surface waters as to cause an invasion of a neighboring owner's interest in the use and enjoyment of his land. The rule recognizes a servitude for natural drainage of surface water. An owner of lower property must accept the burden of surface water which naturally drains upon his land. Conversely, the owner of higher property cannot increase this burden by changing the natural system of drainage. Annot., *Modern Status of Rules Governing Interference With Drainage of Surface Waters,* 93 A.L. R.3d 1193, 1207 (1979).

Elements of the "civil law" rule first appeared in *Teeter v. Nampa & Meridian Irr. Dist.,* 19 Idaho 355, 114 P. 8 (1911). The dispute in that case was between a canal company, which had collected surface water from land above its canal, discharging it upon other land on the lower side of the canal, and the lower landowner who claimed that the concentrated discharge caused his property greater injury than had the more dispersed natural flow. The Supreme Court held that the canal company

could not discharge the concentrated water upon the lower land except within "the accustomed channels" crossing the lower property. *Id.* at 359, 114 P. at 9.

In *Loosli v. Heseman,* 66 Idaho 469, 162 P.2d 393 (1945), the Supreme Court expressly embraced the "civil law" rule. The Court held that an upper landowner had an easement of drainage across the land of a lower proprietor, to the extent of water naturally flowing from the higher ground to the lower tract, but that this servitude could not be augmented by acts of the upper landowner. In *Harper v. Johannesen,* 84 Idaho 278, 371 P.2d 842 (1962), the Supreme Court reiterated the "civil law" rule. Most recently, in *Dayley v. City of Burley, supra,* the Court again endorsed the "civil law" rule. However, the Court acknowledged authority that, even in cases governed by the "civil law" rule, an upper proprietor is entitled to alter the natural flow of surface water by collecting and concentrating it, so long as it is carried across the lower proprietor's property within the confines of a natural watercourse. *E.g., Teeter v. Nampa & Meridian Irr. Dist., supra.* A majority of the *Dayley* court sustained a trial judge's finding that no natural watercourse existed. Accordingly, the majority held that an upper proprietor, the City of Burley, was not entitled to collect surface water through its storm drainage system and to discharge it across privately owned lands below. A dissenting opinion argued for a contrary result upon the premise that a natural watercourse did, in fact, exist.

■ *Dayley* demonstrates that the "civil law" rule may apply differently to surface water drainage within a natural watercourse than to drainage outside such a watercourse. If a natural watercourse exists, the upper landowner may alter the natural flow so long as it remains within the watercourse. This exception to the "civil law" rule has been acknowledged in many other "civil law" jurisdictions. *E.g., Youngblood v. City of Los Angeles,* 160 Cal.App.2d 481, 325 P.2d 587 (1958); *Wellman v. Kelley,* 197 Or. 553, 252 P.2d 816 (1953); *see generally* Kinyon & McClure, *supra,* at 920–25.

## II

■ We now apply the "civil law" rule, with its natural watercourse exception, to the instant case. The facts necessary to apply the rule either have been found by the district court upon substantial evidence, or appear without genuine dispute in the record. As noted previously, King Creek augmented a natural flow of surface water by developing a spring to provide more water for its cattle. During the autumn and winter, water not used in the cattle operation was allowed to flow into a natural channel which crossed several properties until it encountered the Smiths' tract. There the channel lost its definition because of the Smiths' farming activities, and the water spread upon the fields.

Under the general "civil law" rule, the Smiths' farm is subject to a servitude for the natural drainage of water; but King Creek may not so change the flow as to increase this burden. King Creek has, in fact, augmented the flow by developing the spring. However, this increased flow is being discharged into a natural channel. Consequently, we must determine whether the natural watercourse exception to the "civil law" rule is invoked. The inquiry is whether the natural channel is a "watercourse" and, if so, what result follows from the Smiths' destruction of it.

### A

■ Idaho's case law definition of a "watercourse" is set forth in *Hutchinson v. Watson Slough Ditch Co.,* 16 Idaho 484, 488, 101 P. 1059, 1061 (1909):

[A] watercourse is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream,

which is ordinarily a moving body of water.

This definition requires (a) a definite channel, (b) containing a flow of water, which need not be constant but must be more than mere surface drainage occasioned by extraordinary causes, which (c) discharges into another stream or body of water.

The district court in this case found that the natural channel had a definite form until it reached the Smiths' property, and that it carried not only periodic storm water but the natural snow runoff each year. The court did not specifically find that the channel discharged itself into another stream or body of water; but it appears uncontroverted in the record that, before it was obliterated by the Smiths' farming activities, the channel was part of the Portneuf River drainage.

The definitional inquiry, then, is narrowed to whether a channel which contains storm water and annual runoff, but not a year-round flow, represents a "watercourse." The courts of other states are divided on this subject. *Compare, e.g., Phillips v. Burke,* 133 Cal.App.2d 700, 284 P.2d 809 (1955) (holding that a seasonal flow is sufficient to establish a watercourse) *with Weinberg v. Northern Alaska Dev. Corp.,* 384 P.2d 450 (Alaska 1963) (holding that a slough which carries water only during the spring thaw and heavy summer rains is not a watercourse). However, the Idaho case law definition of a "watercourse," set forth in *Hutchinson,* does not require a constant stream of water. *Compare* I.C. § 42–3802 (imposing a constant flow requirement in its more restrictive definition of a "stream channel" governed by the Stream Protection Act).

■ In our view, a regular seasonal flow, together with storm flows, is sufficient to establish a "watercourse." This view is consistent with the result in *Dayley v. City of Burley, supra.* There the Supreme Court upheld a finding that no natural watercourse remained after a dam had been built on a stream. But the Court was careful to note that the old stream channel had not carried runoff water originating below the dam, because that area was flat and the ground "would absorb all the water from the melting snows and from rain storms." 96 Idaho at 103, 524 P.2d at 1075. In contrast, the natural channel here does carry annual runoff, as well as storm water. We conclude that the channel is a "watercourse."

B

By destroying this watercourse, the Smiths have subjected their farm to the risk of flooding whenever there is a flow of surface water. Apparently, the Smiths are willing to accept the annual flow of runoff water, and the occasional flow of storm water; but they object to the flow from King Creek's spring that reaches their farm during the cold weather months.

■ We do not believe that an upper landowner's right to drain water into a natural watercourse is confined to particular seasons. The watercourse exists during the entire year. In *Phillips v. Burke, supra,* the California Supreme Court upheld the right of an upper landowner to discharge irrigation waste water into a natural watercourse. The Court stated that this right could be exercised during the summer irrigation season even though the natural flows from runoff, in the California climate, occurred during the winter. The court further noted that the summer irrigation drainage flow was not greater than the natural flows of winter.

■ In the present case, the district court did not make a specific finding as to the quantity of water reaching the Smiths' farm during the autumn and winter, in comparison to the spring runoff. But it appears without controversy in the record that the cold weather flow from the spring is within the capacity of the natural channel. The natural watercourse exception to the "civil law" rule is applicable here.

■ Because the Smiths would not be entitled to relief from an altered flow contained within a watercourse, it follows that they should not be granted relief from flooding caused by their own filling of the

watercourse. The California Supreme Court held against a similar claim for relief in *Phillips v. Burke, supra.* The Court there cited with approval an earlier decision by a California appellate court in *Cheesman v. Odermott,* 113 Cal.App.2d 26, 247 P.2d 594 (1952). In *Cheesman* the court held that an upper landowner who irrigated crops with well water could discharge the irrigation waste into a natural watercourse. The court recognized that the upper landowner could not discharge water in a manner injurious to lower proprietors. However, the court said this limitation afforded no basis to grant relief to lower proprietors who had caused the flow to be injurious, by leveling the land and obliterating the watercourse. "Their trouble is of their own making," the court observed. 247 P.2d at 596.

The present case presents a variation upon this theme. Here the Smiths had farmed over the watercourse before King Creek improved the spring. But we do not believe the result should turn upon which party acted first. One cannot, by the act of destroying a watercourse, free his land from the burden of accepting future surface water flows that could have been carried within the natural channel. To so hold would endanger the integrity of natural watercourses in Idaho. Moreover, it would deprive upper landowners of drainage rights contemplated by the "civil law" rule.

We conclude that King Creek should bear no liability to the Smiths for a flow of spring water, during cold weather months, which would be contained within the natural watercourse but for the Smiths' obliteration of the channel. The judgment of the district court, permanently enjoining King Creek from allowing any of its spring water to reach the Smiths' farm through the watercourse, except during the runoff season, is reversed. Costs to appellant, King Creek Grazing Association. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.